IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ZACHARY A. MEADOWS and LARA R. MEADOWS, ) ) ) Plaintiffs, ) ) ) v. ) ) ) HSBC MORTGAGE CORPORATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE, et al., ) ) ) ) ) ) ) Defendants. ) | Civil Action Number **2:10-cv-01974-JEO** |

## MEMORANDUM OPINION

Plaintiffs Zachary A. Meadows ("Mr. Meadows") and Lara R. Meadows (collectively "plaintiffs") sued HSBC Mortgage Services, Inc. ("HSBC"), and Federal National Mortgage Association a/k/a Fannie Mae (collectively "defendants") in the Circuit Court of Jefferson County, seeking compensatory and punitive damages arising from defendants' alleged fraud and misrepresentation, violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), violations of Alabama's Deceptive Trade Practices Act, §§ 8-19-1 *et seq.*, ALA. CODE 1975 ("DTPA"), breach of contract, and failure of due process in violation of 42 U.S.C. § 1983. (Doc. 1, Ex. A (Complaint)). HSBC timely removed the action to this court and moved to dismiss the action, in its entirety, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). (Doc. 5). Fannie Mae filed a joinder in the motion. (Doc. 23). For the foregoing reasons, the motion to dismiss is due to be granted in part and denied in part.

**FACTS AND PROCEDURAL HISTORY**[1]

This action arises from plaintiffs' repeated attempts to obtain a permanent loan modification from HSBC pursuant to the Home Affordable Modification Program ("HAMP"), which is a federal program created by the Emergency Economic Stabilization Act ("EESA") to "restore liquidity and stability to the financial system of the United States," to protect life savings, and to promote homeownership.  12 U.S.C. § 5201, *et seq*.  Fannie Mae has characterized HAMP as "a national modification program aimed at helping 3 to 4 million at-risk homeowners—both those who are in default and those who are at imminent risk of default—by reducing monthly payments to sustainable levels" by restructuring the mortgages, without discharging any of the underlying debt.  U.S. Dep't of Treasury, Announcement 09–05R at 1, May 15, 2009.  Thus, HAMP was designed to create a "uniform loan modification process," governed by federal standards.  *Id*.

In March 2005, plaintiffs signed a note and mortgage with Mortgage Electronic Registration Systems, Inc., as nominee for HSBC, pledging their home in Birmingham, Alabama, as collateral to secure the note.  (Doc. 1, Ex. A, at 2 ¶ 5).  HSBC subsequently sold the note and mortgage to Fannie Mae, but HSBC continues to act as the servicing agent for collection purposes.  (*Id*. at 2 ¶ 6).  In March 2009, plaintiffs began discussions with HSBC regarding a loan modification because they were approximately two payments behind on the note.  (*Id*. at 2 ¶¶ 8-9).  During these discussions, a representative of HSBC told Mr. Meadows that HSBC had

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009).

approved plaintiffs for a new government-backed loan modification program.  (*Id*. at ¶ 9).  The representative told Mr. Meadows that HSBC would mail him the appropriate paperwork and that he should complete the paperwork and return it to HSBC.  (*Id*.)  Mr. Meadows asked the representative about making additional payments on the note, and HSBC told him not make such payments until he received the paperwork.  (*Id*.)

In April 2009, plaintiffs submitted the necessary paperwork to HSBC with exception of their 2008 tax returns because the returns had not yet been prepared or filed.  (Doc. 1, Ex. A at 3 ¶ 10).  In place of the 2008 tax returns, plaintiffs submitted their 2006 and 2007 tax returns and a form authorizing HSBC to obtain their tax returns from the Internal Revenue Service once filed.  (*Id*.)  In May 2009, plaintiffs received a letter from HSBC, which granted them a three-month payment reduction on the note and indicated that the loan modification would be finalized within 90 days.  (*Id*. at 3 ¶ 11).  Per the instructions in the letter, plaintiffs made the June 2009 payment on the note.  (*Id*. at 3 ¶ 12).

In late June or early July 2009, Mr. Meadows called HSBC to ask about the status of the loan modification.  (Doc. 1, Ex. A at 3 ¶ 13).  A representative of HSBC told him that HSBC denied the modification because plaintiffs failed to submit their 2008 tax return.  (*Id*.)  Mr. Meadows subsequently sent HSBC a copy of plaintiffs' 2008 tax return.  (*Id*.)  Thereafter, HSBC confirmed that plaintiffs were in an "accepted phase of the program," and that they would receive paperwork with additional instructions.  (*Id*.)  Plaintiffs never received the paperwork.  (*Id*.)

In August 2009, plaintiffs received a letter from HSBC informing them that HSBC had declined their application for a loan modification due to "providing insufficient information." (Doc. 1, Ex A at 3 ¶ 14).  In response, Mr. Meadows called HSBC and was told that "the April

2009 information was now out of date, so plaintiffs would have to re-apply" as a mere formality. (*Id*.) Consequently, plaintiffs sent HSBC a new loan-modification application that included their 2007 and 2008 tax returns. (*Id*. at 4 ¶ 15). HSBC confirmed receipt of the application and informed plaintiffs that it had approved their application and that they should receive another letter outlining their new payment plan. (*Id*.) Plaintiffs never received the promised letter. (*Id*.)

In September 2009, Mr. Meadows called HSBC because plaintiffs had not received the letter outlining the new payment plan. (Doc. 1, Ex. A at 4 ¶ 16). HSBC provided Mr. Meadows with the contact information for a loan resolution specialist and told Mr. Meadows that the specialist would contact them. (*Id*. at 4 ¶ 17). After several weeks passed without receiving a call, Mr. Meadows left a message with the loan resolution specialist. (*Id*.) The specialist returned the message, telling Mr. Meadows that HSBC had approved the loan modification, but "could not provide any paperwork to plaintiffs without first getting paperwork from Fannie Mae." (*Id*.) Mr. Meadows inquired about making a payment, but the loan specialist instructed him to not send a payment because "the loan was in the application process." (*Id*.)

In October 2009, Mr. Meadows called the specialist to ask about the status of the loan modification. (Doc. 1, Ex. A at 4 ¶ 18). The specialist told Mr. Meadows that he had not received the paperwork from Fannie Mae, but would try to push the paperwork along. (*Id*.) Plaintiff then received two letters dated November 17, 2009, from HSBC. (*Id*. at 5 ¶ 19). One letter states that HSBC recognizes that plaintiffs are having difficulty with the mortgage payments and includes the same loan-modification paperwork they had twice submitted. (*Id*.) The second letter tells plaintiffs that the loan has been sent to the law firm of Shapiro & Pickett, LLP, for foreclosure proceedings. (*Id*.) With concern over the letters, Mr. Meadows called the

loan specialist. (*Id*. at 5 ¶ 20). The loan specialist told Mr. Meadows to disregard the letters because "he had talked to Fannie Mae, all was approved, but he was still waiting for the final Fannie Mae paperwork." (*Id*.) Shapiro and Pickett, LLP, did not follow through with the foreclosure proceedings. (Doc. 1, Ex. A at 5 ¶ 21).

In December 2009, the loan specialist called Mr. Meadows and told him that "instead of doing a loan modification agreement as had previously been approved, HSBC now wanted to do a Forbearance Agreement for three months, January 2010 through March 2010." (*Id*. at 5 ¶ 22). Plaintiffs reviewed the forbearance agreement and spoke with the loan specialist about certain provisions to which they disagreed. (*Id*. at 5 ¶ 23). The loan specialist convinced plaintiffs to sign the agreement under the premise that he would continue to work toward a more permanent loan modification. (*Id*.) Plaintiffs signed the forbearance agreement in January 2010 and submitted it to HSBC with the January 2010 payment. (*Id*.)

In late January 2010, Mr. Meadows called the loan specialist to check whether any progress had been made on a more permanent loan modification. (Doc. 1, Ex. A at 5 ¶ 24). Another representative of HSBC informed Mr. Meadows that the loan specialist with whom he dealt previously was no longer with the department and that he should call the special asset department. (*Id*.) Mr. Meadows called the special asset department and learned that "the person was not working toward, nor willing to help plaintiffs obtain the permanent loan modification that they had been promised for over a year." (*Id*.) Consequently, plaintiffs "ceased making additional payments, as it was clear HSBC was not seeking a loan modification as promised." (*Id*.)

Plaintiffs received a letter dated April 16, 2010, stating that HSBC intended to foreclose

on their home on May 18, 2010.  (*Id.* at 6 ¶ 25).  On June 11, 2010, plaintiffs filed this action in the Circuit Court for Jefferson County.  (Doc. 1, Ex. A).  At that time, plaintiffs continued to reside in their home and the record does not indicate that foreclosure proceedings have advanced.  (*Id.* at 1 ¶¶ 1, 5).  On July 21, 2010, HSBC timely removed the action to this court and moved to dismiss the action in its entirety pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).  (Doc. 5).  Fannie Mae subsequently joined HSBC's motion.  (Doc. 23).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 1949 (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## DISCUSSION

Plaintiffs' complaint contains six counts: Count One alleges fraud and misrepresentation; Count Two alleges violations of the FDCPA; Count Three alleges violations of Alabama's DTPA; Count Four alleges breach of contract; and, Counts Five and Six allege a "failure of due process" in violation of 42 U.S.C. § 1983.

### Count One - Fraud and Misrepresentation

In Count One, plaintiffs allege that HSBC fraudulently misled plaintiffs into believing that "they had been approved for a permanent loan modification" and that "[HSBC] was working to help plaintiffs stay in their house and avoid foreclosure." (Doc. 1, Ex. A at 8 ¶¶ 46, 47).  Due to these allegedly false representations, plaintiffs state that they delayed making payments on the note and fell into "peril of losing their home." (*Id*. at 8 ¶ 49).  As a result, they allegedly suffered "mental anguish, emotional distress, and financial fees." (*Id*. at 9 ¶ 50).

Defendants contend that Count One fails because plaintiffs cannot prove that they suffered damages as a result of their reliance on the alleged misrepresentations.  Alabama law is well established that a plaintiff alleging fraud "must prove four elements: (1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a

7

proximate result of the reliance." *Billy Barnes Enters., Inc. v. Williams*, 982 So. 2d 494, 499 (Ala. 2007) (quotation marks and citation omitted). Here, defendants first argue that plaintiffs' alleged reliance on HSBC's oral promises of a loan modification is unreasonable because Alabama's Statute of Frauds requires a loan or commitment to make a loan of $25,000 or more to be in writing. (Doc. 5 at 10) (citing § 8-9-2, ALA. CODE 1975). They rely upon the holding of the Alabama Supreme Court in *Bruce v. Cole*, 854 So. 2d 47, 54 (Ala. 2003), that "an oral [put-call] promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud." While this court recognizes and accepts the holding of *Bruce*, it further finds it distinguishable from the present circumstances in that plaintiffs' fraud claims are not based upon an alleged misrepresentation that HSBC modified the loan or committed to modify the loan, but that HSBC "*approved* [plaintiffs] for a permanent loan modification" and "was working to help plaintiffs stay in their house and avoid foreclosure." (Doc. 1, Ex. A at 8 ¶¶ 46-47) (emphasis added). Defendants have not submitted any Alabama law requiring the *approval* of a loan modification to be in writing.[2] Accordingly, the motion is due to be denied as to this claim.

As a second argument, defendants contend that plaintiffs cannot establish damages proximately caused by their reliance on any alleged misrepresentations. (Doc. 5 at 11). Specifically, defendants argue that plaintiffs' failure to make payments on the note was independent of any representation by HSBC. (*Id*.) To support this assertion, defendants direct

---

[2]In their reply, the defendants note that the plaintiffs' response to the motion states that any representation "'that modification was approved, when in fact it was not,' ... is clearly an oral promise that is void by the operation of the Statute of Frauds...." (Doc. 9 at 4 (citing Doc. 6 at 4)). Although the defendants' citation is correct, the complaint alleges that the fraud lies in the fact that the plaintiffs were led to "believing that they had been approved for a permanent loan modification, when either they had not, or chose to renege, violating the promises it [(HSBC)] had made." (Doc. 1, Ex. A at ¶ 26). While the distinction is slight, it is enough to allow the plaintiffs to survive the motion to dismiss.

the court to plaintiffs' factual allegation that in late January 2010, "plaintiffs ceased making additional payments, as it was clear HSBC was not seeking a loan modification." (Doc. 1, Ex. A at 5 ¶ 24). Defendants further note that although plaintiffs allege that in March and September 2009, HSBC instructed them to not make additional payments, these instances were followed by a reduction and forbearance, respectively. (*Id.*, Ex. A at 2 ¶ 9 and 4 ¶ 17). Plaintiffs respond that it is clear that they have suffered damage as a result of their failure to make payments on the note and that whether their non-payments resulted from HSBC's representation is a question that requires discovery and consideration by a jury.

      Viewing the facts in a light most favorable to plaintiffs as the court must do at this juncture, the court finds that they sufficiently state a fraud claim against HSBC to survive a motion to dismiss. Significantly, to survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiffs have alleged sufficient facts to state a plausible fraud claim against HSBC. However, plaintiffs have failed to allege that Fannie Mae made any fraudulent misrepresentations to them. Therefore, Count One will remain as to HSBC and is due to be dismissed with prejudice as to Fannie Mae.

### Count Two - 15 U.S.C. § 1692

      In Count Two, plaintiffs allege that HSBC violated § 1692e of the FDCPA because HSBC's "communications to plaintiffs were false and misleading" and "did not properly inform them of their rights." (Doc. 1, Ex. A at 9 ¶¶ 52-53). Defendants contend that Count Two fails because HSBC is a creditor, not a debt collector, and, therefore, not subject to the FDCPA. (Doc. 5 at 12). Indeed, the FDCPA limits its consumer protections to acts by "debt collectors," as

defined by the FDCPA.³ The FDCPA defines a "debt collector" as "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (15 U.S.C. § 1692a(6)), and explicitly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... *concerns a debt which was not in default at the time it was obtained by such person*" (15 U.S.C. § 1692(a)(6)(F)(iii) (emphasis added)). Considering these definitions, the Fifth Circuit has held that "debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (emphasis added). *See also Reese v. JP Morgan Chase & Co.*, 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009) ("Under the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' as long as the debt was not in default at the time it was assigned.").

Plaintiffs respond by noting that in paragraph seven of the Complaint they allege that "HSBC is a debt collector" and that in the forbearance agreement HSBC referred to itself as a debt collector. (Docs. 6 at 7, 14 at 1). Plaintiffs further contend that to dismiss the FDCPA claim on the basis that HSBC is not a debt collector is premature at this stage of the litigation, particularly without the benefit of discovery as to "when HSBC acquired the loan or the servicing rights." (*Id*. at 8). However, although plaintiffs include a factual allegation that "HSBC is a debt

---

³Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

collector" and HSBC referred to itself a "debt collector" in the forbearance agreement, the issue is whether HSBC is a debt collector *as defined by the FDCPA*.

The allegations against HSBC arise from HSBC's communications as the entity serving plaintiffs' mortgage, and, as the loan servicer and original creditor, HSBC simply does not constitute a "debt collector" under the FDCPA. *See e.g.*, *Locke v. Wells Fargo Home Mortg.*, No. 10-60286, 2010 WL 4941456, at *2 (S.D. Ala. Nov. 30, 2010) ("Since Wells Fargo was the mortgage company servicing the Plaintiff's mortgage, it cannot be liable as a "debt collector" under section 1692."); *Smith v. IndyMac Fed. Bank, F.S.B.*, No. 10-1348, 2010 WL 5490728, at *6 (N.D. Ga. Sept. 28, 2010) ("It is well established that the FDCPA applies only to 'debt collectors' and not to creditors or mortgage servicers."); *Humphrey v. Washington Mut. Bank, F.A.*, No. 9-1367, 2007 WL 1630639, at *2 (N.D. Ga. June 1, 2007) ("Plaintiffs' Fair Debt Collection Practices Act claim fails because that Act applies only to debt collectors and not to creditors or mortgage servicers."). Accordingly, Count Two is due to be dismissed with prejudice.

## Count Three - Alabama's Deceptive Trade Practices Act[4]

In Count Three, plaintiffs allege that defendants violated Alabama's Deceptive Trade Practices Act ("DTPA"), because "notices and communications to plaintiffs did not properly inform them of their rights" and "were false and misleading." (Doc. 1, Ex. A, at 10 ¶¶ 55-56). Defendants contend that Count Three fails because Alabama DTPA is limited to consumer protection for goods and services exclusive of the servicing of mortgage loans. Defendants rely

---

[4]Plaintiffs generally allege "unfair trade practices" under Alabama law, which the court construes to allege violations of Alabama's DTPA.

upon Chief Judge Sharon Lovelace Blackburn's decision in *Deerman v. Federal Home Loan Mortgage Corp*, 955 F. Supp. 1393 (N.D. Ala. 1997), finding that a mortgage transaction and the ownership and servicing of a mortgage are not covered by Alabama's DTPA. 955 F. Supp. at 1399. In reaching this decision, Judge Blackburn concluded that banks and their affiliates are exempt from Alabama's DTPA and that "[n]o court has held that a loan is a good or service under [Alabama's DTPA]." *Id*. Moreover, Alabama's DTPA requires that "at least 15 days prior to the filing of any action under this section," a prospective plaintiff must file a written demand for relief to any prospective respondent "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." *Id*. at 1399-1400 (citing § 8-19-10(e), ALA. CODE 1975). Here, plaintiffs neither provide caselaw subjecting mortgage servicing to Alabama's DTPA, nor dispute that they failed to make a written demand for relief under Alabama's DTPA before filing this action. For these reasons, Count Three is due to be dismissed with prejudice.

### Count Four - Breach of Contract

In Count Four, plaintiffs allege that defendants have breached two contracts. First, plaintiffs appear to assert that HAMP represents a contract between the federal government and all loan servicers such as HSBC, and they allege a claim for breach of HAMP as intended third-party beneficiaries. (Doc. 1, Ex. A at 10 ¶¶ 59-63). Second, plaintiffs allege that defendants breached a contract with them to modify the terms of the loan. (*Id*. at 11 ¶ 64).

Defendants respond that the breach-of-contract claims fail because no private right of action exists under HAMP and further that plaintiffs are not third-party beneficiaries to HAMP. Indeed, numerous district courts within the Eleventh Circuit have found that no private right of action exists under HAMP. *See e.g.*, *Warren v. Bank of America*, No. 11-70, 2011 WL 2116407,

at *2 (S.D. Ga. May 24, 2011) ("HAMP created neither an express nor implied private right of enforcement."); *Nelson v. Bank of America, N.A.*, No. 10-00929, 2011 WL 545817, at *1 (M.D. Fla. Feb. 8, 2011) (no private right of action under HAMP or the EESA); *Zoher v. Chase Financing*, No. 10-14135, 2010 WL 4064798, at *3 (S.D. Fla. Oct. 15, 2010) (same). *See also Rathore v. Bank of America, N.A*, No. 11-136, 2011 WL 2077538, at *9-10 (E.D. Va. May 24, 2011) ("courts have universally recognized that HAMP does not create a private right of action for borrowers against servicers and lenders"). This court also finds that HAMP does not provide for a private right of action. Congress created HAMP as the administrative program to accomplish the goals of EESA (12 U.S.C. § 5201, *et seq*.) and explicitly delegated Freddie Mac to serve as the compliance authority for HAMP. *See Marks v. Bank of America, N.A.*, No. 10-8039, 2010 WL 2572988, at *3-5 (D. Az. June 22, 2010).

Plaintiffs rely on *Reyes v. Saxon Mortgage Servicing*, No. 9-1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009), to argue that they should be allowed to proceed with a third-party breach of contract claim involving HAMP. (Doc. 6 at 3). However, as courts in *Wright v. Bank of America, N.A.*, 2010 WL 2889117, at *5 (N.D. Cal. July 22, 2010), and *Marks* noted, *Reyes* is distinguishable. In *Reyes*, the plaintiff alleged that he was a third-party beneficiary to a separate contract between the defendant who serviced the loan and Fannie Mae, and he attached a copy of the contract to his complaint. 2009 WL 3738177, at *2. Here, plaintiffs do not allege breach of a contract, apart from HAMP, between HSBC and Fannie Mae. Instead, they allege that they are third-party beneficiaries to HAMP. (Doc. 1, Ex. A at 11 ¶ 62) ("HAMP represents both an offer and an enforceable agreement between all servicers accepting the offer. Plaintiffs are third party beneficiaries of such agreement."). As the United States District Court for the District of

Arizona found in *Marks*, the HAMP contract "does not grant plaintiff the *right* to enforce the provisions of the agreement. Because defendant was not required to admit or deny plaintiff's loan, only to *consider*, plaintiff could not have ... reasonably believed that defendant was obligated to modify her loan." *Marks*, 2010 WL 2572988, *11 (emphasis original). Thus, plaintiffs are merely incidental beneficiaries of HAMP and *Reyes* is inapplicable. As such, plaintiffs' claims concerning breach of HAMP are due to be dismissed with prejudice.

Second, the claim for breach of a contract "to modify ... between plaintiffs and defendants" fails because no written agreement exists. As referenced earlier, Alabama's Statute of Frauds requires agreements to modify the provisions of an agreement or commitment to lend money with a principal amount financed more than $25,000 to be in writing. *See* § 8-9-2(7), ALA. CODE 1975. It is axiomatic that an oral contract is void where Alabama's Statute of Frauds requires the agreement to be in writing. *Id*. Therefore, plaintiffs' claims concerning breach of a contract to modify the loan are due to be dismissed with prejudice.

### Counts Five and Six - Due Process Violations under 42 U.S.C. § 1983

In Counts Five and Six, plaintiffs allege violations of their Fifth Amendment due process rights under 42 U.S.C. § 1983 and seek attorneys' fees and costs under 42 U.S.C. § 1988. Specifically, plaintiffs alleged that defendants failed to provide them with notice of denial of access to loan modification, specific reasons for denial of access to loan modification, notice of the right to appeal an adverse decision related to the loan modification, and a mechanism for appeal of their loan modification. (Doc. 1, Ex. A at 12 ¶¶ 70-73). Defendants respond that the claim fails because the alleged actions do not constitute state action. The court agrees.

To state a claim under § 1983, a plaintiff "must prove (1) a violation of a constitutional

right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). "A person acts under color of state law when he acts with the authority possessed by virtue of his employment with the state." *Griffin v. City of OpaLocka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Private action may be deemed state action for § 1983 purposes only when the challenged conduct may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Here, plaintiffs fail to allege any facts indicating that defendants took any actions that may be "fairly attributable to the State." *See also Davis v. Prudential Sec.*, 59 F.3d 1186, 1190 (11th Cir. 1995) ("it is axiomatic that constitutional due process protections do not extend to private conduct abridging individual rights.") (quotation marks and citations omitted). Accordingly, Counts V and VI are due to be dismissed.

## CONCLUSION

Based on the foregoing, the court finds that defendants' Motion to Dismiss (doc. 5) is due to be granted in part and denied in part. All claims with exception of the fraud and misrepresentation claim (Count One) against HSBC are due to be dismissed with prejudice. An appropriate order will be entered.

**DONE**, this the 27th day of September, 2011.

_____
**JOHN E. OTT**
United States Magistrate Judge